UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ULTRA RECORDS, LLC,

                Plaintiff,

           - against -

ULTRA INTERNATIONAL MUSIC
PUBLISHING, LLC,

                Defendant.
------------------------------------------------------------X

22 Civ. 9667

**COMPLAINT WITH JURY DEMAND**

Plaintiff Ultra Records, LLC, by its attorneys, Dorsey & Whitney LLP, for its Complaint against defendant Ultra International Music Publishing, LLC, alleges as follows:

## Introduction

1. Plaintiff Ultra Records, LLC ("Ultra Records" or the "Company") is an extraordinarily successful music label with a roster of prominent artists who have had a profound impact not just on music, but popular culture, for decades.

2. Ultra Records was founded in approximately 1995 by Patrick Moxey. Moxey ran Ultra Records as its President from its founding, including after the purchase of a 50% interest in Ultra Records by Sony Music Entertainment ("SME") in 2012, until he left the Company when SME bought out his remaining interest in the Company in early 2022.

3. Notwithstanding that Moxey received a substantial payment as part of the buyout, after which he ceased to have any involvement in the business of Ultra Records, he has sought to perpetuate the falsehood that he remains involved with Ultra Records by wrongfully continuing to use Ultra Records' ULTRA trademark as part of his music publishing business, defendant Ultra International Music Publishing, LLC ("Ultra International Music Publishing" or "Defendant"). Under the terms of a December 21, 2012 Asset Contribution and Membership

Interest Purchase Agreement (the "December 2012 Agreement"), Ultra International Music Publishing and its affiliates were only permitted to use the word "Ultra" under license from Ultra Records. That license was terminated by Ultra Records following the buyout, effective March 29, 2022. Notwithstanding, Ultra International Music Publishing has continued to use the word "Ultra" in a manner that is violative of Ultra Records' valuable trademark rights under both U.S. and New York law.

### Parties, Jurisdiction and Venue

4. Plaintiff Ultra Records is a limited liability company organized under the laws of the State of Delaware that maintains offices at 25 Madison Avenue, New York, New York.

5. Upon information and belief, defendant Ultra International Music Publishing is a limited liability company organized under the laws of the State of New York, having its principal place of business at 137 West 25th Street, 10th Floor, New York, New York. Upon information and belief, Ultra International Music Publishing also does business under the following assumed names registered with the New York Secretary of State: Ultra Music Library, and Ultra Music.

6. This is a civil action arising out of Defendant's infringement of certain federally registered trademarks owned and used by Ultra Records, false designations of origin and false representations, and unfair competition, in violation of §§ 32(1) and 43(a)(1)(A) of the Trademark Act of 1946, *as amended* (the "Lanham Act"), 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A); and for trademark infringement and unfair competition under the common law of the State of New York.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

8. Upon information and belief, this Court has personal jurisdiction over Defendant pursuant to CPLR 301 and 302 by virtue of its physical location within this State and this District, its commission of tortious conduct as described herein in the State of New York and this District, its transaction of business within the State of New York and this District, and its contracts to supply goods in the State of New York and this District, as described herein. In addition, the December 2012 Agreement contemplates that any actions with respect to that Agreement will be brought in the state or federal courts located in New York, New York.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

**Ultra Records and the Valuable ULTRA Trademark**

10. Ultra Records was founded in 1995 by Moxey, an experienced record label executive. Over time, Ultra Records has enjoyed phenomenal success releasing music created by a star-studded array of artists who have generated substantial popular and critical acclaim, as well as significant sales success.

11. Ultra Records' releases have both won and been nominated for many Grammy and other music industry awards, such as the Best American Music Label award from the International Dance Music Awards, which Ultra Records has won ten consecutive times. Dozens of Ultra Records' releases have received Diamond, Platinum and Gold certifications and achieved substantial success on recording charts both in the U.S. and internationally. Ultra Records' releases are disseminated through all of the most widely used digital streaming services, including Spotify, Pandora and Apple Music, as well as in physical form. Many of Ultra Records' releases have been featured in films, television and streaming programs, video games and advertisements for well-known brands.

12. All of this sales, critical and popular success has resulted in the creation of substantial goodwill among consumers and the trade in the ULTRA trademark owned by Ultra Records. Indeed, Ultra Records has consciously sought over time to create an association among both consumers and the trade between the well-known artists on Ultra Records' roster and the ULTRA trademark. Exhibit 1 attached hereto is an example of how both consumers and the trade associate the ULTRA trademark with the artists signed to its label – a screenshot showing how Spotify tracks "Ultra Records New Releases," with the ULTRA trademark prominently featured. This is simply one of many ways that consumers and the trade are exposed to and associate the ULTRA trademark with Ultra Records' musical releases, which are heavily advertised and promoted, often in combination with the ULTRA mark. Both consumers and the trade have come to associate the ULTRA trademark with Ultra Records and designating the source of Ultra Records' music releases.

13. The ULTRA trademark was first used by Ultra Records or its predecessor company in 1996, and the mark has been continuously used ever since in U.S. commerce. Ultra Records is the owner of trademark registrations issued by the U.S. Patent & Trademark Office on the Principal Trademark Register for the ULTRA trademark, as set forth below:

| Reg. No. | Trademark | Goods |
| --- | --- | --- |
| 3,308,129 | ULTRA | pre-recorded audio music compact discs |
| 3,009,876 | ULTRA | musical sound recordings |

Both of the foregoing trademark registrations are valid and subsisting, as well as incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. The ULTRA trademark is distinctive and symbolizes consumer goodwill whose value to Ultra Records is substantial.

**Defendant's Ongoing and
<u>Unauthorized Use of the ULTRA Trademark</u>**

14. Moxey was the original founder of Ultra Records, and he both ran and was closely associated with Ultra Records for many years.  Moxey, Ultra Records and SME, along with another company associated with Moxey, entered into the December 2012 Agreement as part of a transaction that established a global arrangement between SME and Moxey, conducted through Ultra Records, that gave Ultra Records access to SME's domestic and international marketing and promotional resources, while granting SME an ownership interest in Ultra Records.  After the relationship was established, Ultra Records, with SME's assistance, achieved even more sales and critical success than had been the case previously.

15. Between December 21, 2012 and December 20, 2021, Moxey was at all times the Ultra Records executive who managed the day-to-day operations of Ultra Records and served as the public face of the company, holding the title of President.  Between December 21, 2012 and December 20, 2021, both SME and Moxey owned a 50% interest in Ultra Records.  Upon the effective date of a December 2021 buyout agreement, SME became the sole owner of the Company.

16. During the decade in which Ultra Records was co-owned by SME and Moxey, defendant Ultra International Music Publishing operated a music publishing business using "Ultra" as part of its name.  Ultra International Music Publishing was and, upon information and belief, remains owned or controlled by Moxey and/or other entities associated with him, and it was and is operated separately from Ultra Records, with no involvement by SME.  Many Ultra Records artists have published their works through Ultra International Music Publishing.

17. The December 2012 agreement stated as follows with respect to the use of the word "Ultra" by defendant Ultra International Music Publishing, in Section 5.8(d):

> SME acknowledges that Ultra International Music Publishing LLC (**"UIMP"**) makes use of and, following the Closing Date, will continue to make use of the "Ultra" name in the corporate names and business activities of the following entities: Ultra Music Publishing Inc., Ultra International Music Publishing LLC, Ultra Music Europe, Ultra Music Publishing Europe and Ultra Music Library. UIMP may continue to use the "Ultra" name only in the foregoing manner and only in connection with its music publishing and music library businesses. In no event will UIMP use the Ultra name in connection with the word "Records". The Company [Ultra Records] will, and PM [Moxey] will cause UIMP to, negotiate in good faith in order to enter into a non-exclusive, non-transferrable license that incorporates the provisions of this Section 5.8(d) and such other terms as are appropriate for licenses of a similar nature.

Based on the foregoing, the parties agreed that any use of the term "Ultra" by Ultra International Music Publishing was authorized by Ultra Records, subject to certain restrictions, as part of a non-exclusive license and such use thereby inured to Ultra Records' benefit. No written license agreement was ever executed between Ultra Records and Ultra International Music Publishing concerning the latter's use of the ULTRA trademark. Rather, Ultra Records, then being managed primarily by Moxey, relied on Moxey's control over Ultra International Music Publishing to assure the quality of the services offered by Ultra International Music Publishing under the ULTRA mark. At all relevant times, the quality of such services was acceptable to Ultra Records.

18.     As discussed, in late 2021, SME exercised an option under its agreements with Moxey and entities affiliated with him to acquire from them sole ownership of Ultra Records in exchange for a substantial monetary payment, and Moxey exited Ultra Records in early 2022. In light of Moxey's departure from Ultra Records, the Company decided to terminate the license to use the ULTRA trademark granted to Ultra International Music Publishing in 2012, which had no specified end date and was therefore terminable at will by Ultra Records under New York law, which governs the December 2012 Agreement, on reasonable notice to Ultra International Music Publishing.

19. Accordingly, on December 29, 2021, Ultra Records sent written notice to Defendant that the license granted to it to use the term "Ultra" in connection with its business would terminate as of March 29, 2022. Thereafter, Defendant, through counsel, disputed the existence of the license memorialized in the December 2012 Agreement, denied that its continued use of the term "Ultra" in connection with its music publishing business was violative of Ultra Records' valuable trademark rights, and insisted that its use of that term with its business would continue. Upon information and belief, defendant Ultra International Music Publishing, as controlled by Moxey, continues to use the "Ultra" trademark in connection with music publishing services, which are closely related to the services offered by Ultra Records under the ULTRA trademark.

20. Defendant, in common with the rest of the trade, is obviously well aware of Ultra Records' ULTRA trademark, and of the goodwill represented and symbolized thereby. Notwithstanding said awareness, and in fact by reason of same, Defendant is knowingly perpetuating its use of the term "Ultra" to foster a false connection with the business with which it was once associated. Such use has not been authorized by Ultra Records and is occurring in a manner designed to confuse consumers and that violates the terms of the license Ultra Records terminated as of March 29, 2022.

21. Defendant's offering of music publishing and related services under the ULTRA trademark is intended to, and is likely to, cause confusion, mistake or deception of the trade and public and to cause them to believe that Defendant's services are authorized, sponsored or approved by Ultra Records or are otherwise affiliated or connected with Ultra Records and/or the ULTRA trademark.

22. Defendant's activities have caused and will continue to cause irreparable harm to Ultra Records and to the substantial goodwill embodied in the ULTRA trademark, and said acts will continue unless restrained by this Court.

23. Ultra Records has no adequate remedy at law for such infringement.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement Under
### Section 32(1) of the Lanham Act

24. Ultra Records repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

25. Defendant's conduct constitutes infringement of Ultra Records' ULTRA trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF

### Infringement, Unfair Competition and Use of False Designations
### of Origin Under Section 43(a)(1)(A) of the Lanham Act

26. Ultra Records repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

27. Defendant's conduct constitutes infringement, unfair competition and the use of false designations of origin and false descriptions and representations in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), with respect to Ultra Records' ULTRA trademark.

## THIRD CLAIM FOR RELIEF

### Common Law Trademark Infringement

28. Ultra Records repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

29. Defendant's conduct constitutes infringement of Ultra Records' ULTRA trademark under common law.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

30. Ultra Records repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

31. Defendant's bad faith conduct with respect to Ultra Records' ULTRA trademark constitutes unfair competition by passing off, misappropriation and unprivileged imitation under common law.

## FIFTH CLAIM FOR RELIEF

### Dilution in Violation of State Law

32. Ultra Records repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

33. Defendant's conduct with respect to the ULTRA trademark will improperly dilute the value of such mark in violation of New York General Business Law § 360-l.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract

34. Ultra Records repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

35. In December 2012, Ultra Records granted Defendant the right to use the ULTRA trademark in connection with the business of Ultra International Music Publishing through a license, whether express or implied.

36. Thereafter, Ultra Records fully performed its obligations as licensor.

37. Since March 29, 2022, Defendant has breached the obligation inherent in such license to cease all use of the ULTRA trademark following the separation of Ultra Records from Ultra International Music Publishing.

38. Ultra Records has sustained damages resulting from such breach in an amount to be determined at trial.

WHEREFORE, Ultra Records prays for a judgment:

1. Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from the offering for sale, sale, advertising and/or promotion in the United States of any music or other entertainment-related services that:

(i) use or depict in any way the term "Ultra," any variation thereof, or any other designation that is confusingly similar to Ultra Records' ULTRA trademark; and

(ii) any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's business or services are in any way associated or affiliated with or related to Ultra Records or Ultra Records' services, or to dilute the distinctiveness of the ULTRA trademark.

2. Directing Defendant to file with the Court and serve on counsel for Ultra Records, within thirty days after entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116.

3. Directing Defendant to account to Ultra Records for its profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a).

4.        Awarding Ultra Records its actual damages incurred as a consequence of Defendant's wrongful conduct as described herein, pursuant to 15 U.S.C. § 1117(a) and New York law.

5.        Awarding Ultra Records its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117 and the inherent authority of the Court.

6.        Awarding Ultra Records interest at the rate provided for under New York or Delaware law, as applicable.

7.        Awarding Ultra Records such other and further relief as the Court deems just and proper.

## JURY DEMAND

Ultra Records demands a trial by jury on all of its claims so triable.

Dated:    New York, New York
          November 11, 2022

                                        DORSEY & WHITNEY LLP

                                        By:  /s/ Bruce R. Ewing
                                             Bruce R. Ewing
                                             Kaleb McNeely
                                             51 West 52nd Street
                                             New York, New York 10019
                                             (212) 415-9200
                                             ewing.bruce@dorsey.com
                                             mcneely.kaleb@dorsey.com

                                             *Attorneys for Plaintiff Ultra Records LLC*