UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ULTRA RECORDS, LLC,

                       Plaintiff,

  -against-

ULTRA INTERNATIONAL MUSIC PUBLISHING, LLC,

                       Defendant.

22-cv-9667 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

The parties here are estranged corporate siblings. In 1995, Patrick Moxey founded Ultra Records, Inc., which would later become Plaintiff Ultra Records, LLC. Dkt. 90 ¶¶ 1–2. In 2004, Moxey founded Ultra International Music Publishing. *Id.* ¶ 5. As their names suggest, Ultra Records is a music-recording company, with services like musical production and promotion; Ultra Publishing is a music-publishing company, with services like composition licensing. Dkt. 122 ¶¶ 2, 5. (For simplicity, the Court will refer to them as "Records" and "Publishing.") In 2012, Records was partly sold off, with the buyer getting an option to buy the rest of Records later. *Id.* ¶ 13; Compl. ¶¶ 14–18, Dkt. 1. As part of that agreement, Records purportedly granted Publishing a license to continue using the Ultra trademark. Dkt. 122 ¶ 17. In 2021, the buyer exercised the option to buy the rest of Records and then terminated the license. Dkt. 90 ¶ 17; Compl. ¶¶ 18–20. Publishing continued to use the mark, so Records sued.

On this motion, Publishing seeks partial summary judgment on two issues. First, it says it owned the Ultra mark in the music-publishing industry before 2012. Second, it says Records can't carry its burden on disgorgement.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

### I. Mark ownership

Publishing first seeks partial summary judgment on the issue of mark ownership. Although Publishing acknowledges that Records is the senior mark holder in the music-*recording* industry, Publishing says there is no dispute that, before 2012, it owned the Ultra mark in music *publishing*. To move for summary judgment, Publishing must "identif[y] … the part of each claim or defense … on which summary judgment is sought." Fed. R. Civ. P. 56(a). Publishing says this issue is relevant to Records' infringement claim because Records "has the burden of proof to demonstrate that it owns the Trademark for music publishing services, including showing from whom it acquired those rights and how." Dkt. 64 at 5.

This framing is wrong. All that Records must prove for its infringement claim is that it owned a valid mark that was infringed by Publishing. *See* 15 U.S.C. § 1114(1)(a). It need not own a valid mark in a particular industry. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:6 (5th ed. 2024) ("The exclusionary rights of a registered trademark owner are not limited to the goods and/or services specified in the registration, but go to any goods or services on which the use of the mark is likely to cause confusion. Validity and infringement are two separate issues. On the issue of validity, the recitation of goods and services in the registration limits the scope of the presumption of validity. But it does not limit the scope of accused goods and services on which use will be likely [to] cause confusion. Additionally, the fact that the goods or services fall in different parts of the USPTO classification system is totally irrelevant to the issue of likelihood of confusion." (footnotes omitted)).

And for infringement, Records must show a likelihood of confusion. And two marks can be confusingly similar even if they are technically in different industries. *Id.* § 24:65 ("[I]t is as clear as can be that a registered trademark is infringed by use of a confusingly similar mark on any goods or services on which the use of the mark is likely to cause confusion."). A consumer can be confused in "think[ing] that the infringer's goods come from the same source as the senior user's goods or are sponsored by, affiliated with or connected with the senior user." *Id.* § 24:24.

In the Second Circuit, likelihood of confusion is determined by the eight-factor *Polaroid* test. One factor is the "proximity of the products." *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 272 (2d Cir. 2021) (citation omitted). This factor seems to be what's really at issue here. The Court takes Publishing's argument to be that Records had no trademark rights in the music-publishing space before 2012. But this is just one subpart of Records' infringement claim. And in any event, it is disputed.

Records first points to several real-world examples in which one company handles both recording and publishing while using the same mark for both. Dkt. 122 ¶ 9. These examples suggest that recording and publishing might be close enough for a music-recording company to bridge the gap into music publishing. Indeed, the companies here were created by the same person, and there was substantial overlap in their operations and resources for years. *Id.* ¶ 12. Publishing emphasizes that the companies were legally separate, but that fact has no bearing on the products' proximity.

Publishing also points out that another company uses the Ultra mark for music festivals, indicating "different subsections of the music industry" in which each company has a "unique niche." Dkt. 121 at 4. This one example is not nearly enough to put the question beyond genuine dispute. And as a matter of common sense, music recording and publishing are probably more closely related to each other than either one is to music festivals. Regardless, the product-proximity problem is one fact-intensive part of a fact-intensive test. Viewing the evidence in the light most favorable to Records, this issue is genuinely disputed. *See Solid 21, Inc. v. Richemont N. Am., Inc.*, 2023 WL 3996530, at *8 (S.D.N.Y. June 14, 2023).

## II.  Disgorgement

Publishing next seeks summary judgment on disgorgement. It says Records can't show any profits "flowing directly from the infringement." Dkt. 121 at 7 (internal quotation marks omitted). But Publishing again misunderstands Records' burden. "In assessing profits[,] the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). "This scheme 'allocates the initial burden of proving gross sales to the trademark plaintiff, and the subsequent burden of proving costs to the infringing defendant.'" *Diesel S.p.A. v. Diesel Power Gear, LLC*, 2023 WL 5718000, at *3 (S.D.N.Y. Sept. 5, 2023) (quoting *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990)).

Publishing says showing gross sales is no longer enough for a plaintiff to carry its initial burden. It says the Supreme Court's decision in *Lexmark* requires the plaintiff to show that the mark proximately caused the defendant's profits. *Lexmark* did no such thing. *Lexmark* held that "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). This holding has nothing to do with disgorgement. (And Publishing hasn't argued that Records lacks a cognizable commercial injury.) In fact, *Lexmark*'s only mention of disgorgement is to note that it need not be proved with certainty: "Even when a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be entitled to … disgorgement of the defendant's ill-gotten profits under § 1117(a)." *Id.* at 135–36 (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) ("Nothing in the Lanham Act conditions an award of profits on plaintiff's proof of harm, and we've held that profits may be awarded in the absence of such proof.")).

Even if one could read *Lexmark* the way Publishing does, the Second Circuit hasn't. Publishing points out that the cases cited by Records predate *Lexmark*, but every case after *Lexmark* has applied the same burden-shifting test. *See 4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 215 n.11 (2d Cir. 2019); *Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 50–51 (2d Cir. 2017); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 133 (2d Cir. 2014).

Nor do the cases cited by Publishing seem to read *Lexmark* as upending this burden-shifting test. Admittedly, one out-of-circuit case uses "proximate[] cause[]" to describe the sales requirement. *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 99 F.4th 1150, 1173 (10th Cir. 2024). But

a close reading of that case and the cases it cites reveals an understanding different from Publishing's. In those cases, courts are simply requiring "some connection between the identified 'sales' and the alleged infringement." *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1244 (10th Cir. 2023) (quoting *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 472 (6th Cir. 2022)). For example, the infringement might involve just one of a company's many products. *See Max Rack*, 40 F.4th at 472. Or the infringement might be limited in time. *See Vitamins Online*, 71 F.4th at 1244. In those situations, courts might require, to the extent feasible, some initial apportionment by the plaintiff. *See id.*; *Max Rack*, 40 F.4th at 1244.

The Court is not so sure about this practice. *See McCarthy on Trademarks and Unfair Competition* § 30:65 (discussing apportionment burdens and collecting Supreme Court authority). The statute requires plaintiffs to prove defendants' "sales only." The Court fails to see the textual hook for reading in "relevant" or some other modifier. Of course, "[t]he notion that some things 'go without saying' applies to legislation just as it does to everyday life." *Bond v. United States*, 572 U.S. 844, 857 (2014). But § 1117(a) requires the defendant to "prove *all* elements of cost or deduction claimed." In any event, the initial burden likely makes little practical difference. Plaintiffs are unlikely to take the time to prove sales that are clearly irrelevant. If they do, defendants should be able to easily narrow the inquiry once the burden shifts to them. And as a backstop, the Court may always modify "inadequate or excessive" disgorgement figures. § 1117(a). Regardless, the Court does not take a position here. This issue wasn't raised until Publishing's reply brief, and it makes no argument that its sales should be limited by time, product, or some other measure. The Court rejects the argument that Records must show profits flowing directly from the infringement. And Publishing didn't move for summary judgment on the grounds that either (1) Records lacks evidence of Publishing's gross sales or (2) Publishing's costs and deductions are beyond genuine dispute. So the Court denies the motion.

## CONCLUSION

For these reasons, Defendant's motion is DENIED. Because the three motions to exclude wouldn't make a difference to the outcome of this motion, the Court holds them over to be decided with the motions in limine. By August 15, 2024, the parties shall meet, confer, and submit their weeks of trial availability in October, November, and December 2024.

SO ORDERED.

Dated: August 6, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge