UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULTRA RECORDS, LLC,<br><br>         Plaintiff,<br><br>   -against-<br><br>ULTRA INTERNATIONAL MUSIC PUBLISHING, LLC,<br><br>         Defendant. | 22-cv-9667 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

As the Court noted in its previous opinion, the parties in this case are estranged corporate siblings. Dkt. 131. Plaintiff Ultra Records LLC is a music recording company. Defendant Ultra International Music Publishing LLC is a music publishing company. (The Court refers to Ultra Records as "Records" and Ultra International Music Publishing as "Publishing.") Records has sued Publishing for trademark infringement under the Lanham Act, breach of contract, and other claims related to Publishing's use of the "Ultra" name. *See* Dkt. 1 ¶¶ 24-38. For its part, Publishing seeks a declaration confirming its right to use that name. Dkt. 15 ¶¶ 16-21.

In the lead up to trial, both Records and Publishing have filed motions to exclude expert testimony. Records seeks to exclude the testimony of Bijan Amirkhani and portions of the testimony of Gary Casson and Robert Kneuper. Publishing seeks to exclude the testimony of Jeff Rougvie. For the reasons set forth below, Records' motion to exclude Amirkhani's testimony and portions of Casson's testimony is GRANTED in part and DENIED in part and Publishing's motion to exclude Rougvie's testimony is DENIED. The Court reserves decision on Records' request to exclude portions of Kneuper's testimony.

## LEGAL STANDARDS

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the proponent of expert testimony must show that the "witness . . . is qualified as an expert by knowledge, skill, experience, training, or education," and that it is more likely than not that the expert's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 539

(S.D.N.Y. 2004) ("[Rule 702] incorporates principles established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Supreme Court charged trial courts with a gatekeeping role to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" (quoting *Daubert*, 509 U.S. at 589)).

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). Nevertheless, "[u]nder *Daubert*, trial judges are charged with ensuring that expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Zuchowicz v. United States*, 140 F.3d 381, 386 (2d Cir. 1998) (quoting *Daubert*, 509 U.S. at 597). "Thus, while *Daubert* and the Federal Rules of Evidence 'allow district courts to admit a somewhat broader range of scientific testimony than would have been admissible under *Frye*, they leave in place the "gatekeeper" role of the trial judge in screening such evidence.'" *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997)).

## DISCUSSION

### A. Amirkhani

Bijan Amirkhani is a music producer and songwriter who currently works with Publishing. Dkt. 54, Ex. 2 at 1.[1] His export report discusses the differences between record companies and music publishers, the reasons why songwriters sign with publishing companies, the factors songwriters and producers consider when choosing a publishing company, and the likelihood of confusion "if a record company and publishing company have similar names, but are owned by unrelated entities." Dkt. 54, Ex. 2 at 2-3.

Records argues that Amirkhani is unqualified to offer expert testimony and that his opinions lack a sufficient factual basis. Publishing responds that neither is true. For the most part, the Court agrees with Publishing. However, Amirkhani is precluded from testifying about likelihood of confusion.

Amirkhani's experience in the music industry qualifies him as an expert. "Even if a proposed expert lacks formal training in a given area, he may still have 'practical experience' or 'specialized knowledge' qualifying him to give opinion testimony under Rule 702." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 328 (S.D.N.Y. 2022) (quoting *McCulloch v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)); *see also United States v. Angelilli*, 660 F.2d 23, 39-40 (2d Cir. 1981) (testimony properly admitted where witnesses had extensive personal experience in industry). Amirkhani clearly has practical experience in the music industry: he "began [his] music producing and writing career over fifteen years ago," has worked full-time as a music producer

---

[1] The Court references Amirkhani's report as "Exhibit 2" because it was labeled as such, even though it's the first exhibit attached to Dkt. 54. Similarly, Casson's report is "Exhibit 3," even though it's the second exhibit attached to Dkt. 54.

and writer for the past seven years, and has collaborated with prominent artists in the music industry. *See* Dkt. 54, Ex. 2 at 1.

Records objects that Amirkhani doesn't have the right sort of personal experience to make him an expert on music industry practices. *See* Dkt. 50 at 10 (objecting that Amirkhani hasn't worked in the music industry long enough, hasn't signed with more publishing companies, hasn't signed with a record label, and hasn't personally negotiated a relevant contract). But Amirkhani's experience is "neither tangential nor short-lived." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 473 (S.D.N.Y. 2010) (hedge-fund manager who worked only at one hedge fund for his career qualified as expert on practices of hedge-fund administrators). And as courts in this Circuit have repeatedly observed, "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007). Records doesn't—and can't—deny that Amirkhani has practical experience in the general field at issue here. Beyond that, whether he has precisely the sort of experience Records thinks he should "go[es] to the weight, not the admissibility, of his testimony." *McCullock*, 61 F.3d at 1044.

Amirkhani uses this practical experience as the factual basis for his testimony. His testimony is based on the experience he gained in working with "hundreds of songwriters and publishers" and his own personal experience as a songwriter and producer. *See* Dkt. 54, Ex. 2 at 1. This a reliable basis for most of his testimony. *See Vett v. City of New York*, 2023 WL 7325926, at *9 (S.D.N.Y. Nov. 7, 2023) (holding that an expert's testimony about what a "well-trained police officer" would know was reliable where the expert relied on his professional experience of working with police officers).

However, Amirkhani's opinion that no one would be confused by Records and Publishing having the same name is plainly out of bounds. As Records points out, Amirkhani's report fails to provide any reliable basis for his assurances about what's going on inside the heads of other people. *See Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 377 (D.N.J. 2002) ("Apart from consumer surveys, lay or even expert opinion about the likelihood of confusion is inadmissible or entitled to little weight." (cleaned up)); *see also* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:2.75 (5th ed. 2024) (noting the unreliability of expert opinion on likelihood of confusion absent a survey). If Amirkhani were testifying as a fact witness based on his personal knowledge, he certainly could have offered testimony about his own confusion (or lack thereof). But it is precisely to smuggle in otherwise inadmissible market-wide testimony—with no basis in evidence from the marketplace—that he's been presented as an expert. Rule 702 doesn't allow that.

### B. Casson

Gary Casson is an attorney and executive who has worked in the music industry for more than 45 years. Dkt. 54, Ex. 3 at 1. Casson's report discusses the functions of a music publisher, the

functions of a record label, and differences between the two. *Id*. at 3-16. Casson also discusses the history of the Ultra name. *Id*. at 16-19.

Records acknowledges that much of Casson's testimony is admissible. *See* Dkt. 50 at 6; Dkt. 110 at 2. It objects to just two paragraphs in his report. *See* Dkt. 50 at 6. In each of these paragraphs, Casson states point-blank that there is no likelihood of confusion for a particular group of music industry customers. *See* Dkt. 54, Ex. 3 at 5, 20. These portions of Casson's testimony are inadmissible.

Just like Amirkhani, Casson opines on consumers' state of mind without any reliable basis in fact. *See New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, 2003 WL 23508131, at *4 (D. Conn. Aug. 11, 2003) ("There is a very real problem with presentation of [likelihood of confusion] evidence through an expert witness, whose data gleaned from personal experience may blur into a general impression over the course of time and thus cannot be dissected through cross-examination, and whose methodology in arriving at opinions may be either not apparent, or worse, nonexistent."). Publishing attempts to defend Casson's testimony as just about consumers' buying processes. Citing to *ROMAG Fasteners, Inc. v. Fossil, Inc.*, 2014 WL 1246554, at *3 (D. Conn. Mar. 24, 2014), Publishing says that expert testimony about how consumers decide what to purchase doesn't require survey evidence, so long as the expert doesn't speak "about confusion when consumers are faced with the marks." *See* Dkt. 92 at 2-3. According to Publishing, Casson will only testify that the marks aren't part of the buying process, not about confusion between the marks.

If that is the limit of Casson's testimony, then there is no issue. However, Casson's report states directly that there is no likelihood of confusion among songwriters, DSPs, and synch licensees. Dkt. 54, Ex. 3 at 20. That's an opinion *about confusion* unmoored from a valid survey or other reliable basis in fact. As Records seems to recognize with its surgical objections, the problem with Casson's testimony is that he ventures beyond a description of consumers' buying practices to opine on confusion, which he has no basis to do.

### C. Rougvie

Publishing seeks the exclusion of Records' expert Jeff Rougvie. Rougvie has spent more than forty years in various parts of the music industry, and he discusses the degree of competitive proximity between record companies and publishing companies. *See* Dkt. 58, Ex. B at 2.

Publishing claims that Rougvie is unqualified, that his testimony is unreliable, and that his opinions are irrelevant to the issues to be tried. Publishing's arguments do not warrant exclusion. When an expert's "testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, at *6 (S.D.N.Y. Aug. 31, 2010) (internal quotations omitted) (citation omitted).

4

On Rougvie's qualifications, Publishing's argument isn't that Rougvie lacks experience. *See* Dkt. 58, Ex. B at 2 (stating Rougvie has more than forty years of experience in the music industry). Publishing instead claims that Rougvie lacks both recent and the correct type of experience in the music industry. To Publishing's credit, Rougvie does characterize the music industry as subject to major "technological disruption." *Id.* at 3. However, that the industry is consistently changing doesn't mean Rougvie's four decades in the industry amount to nothing.

Though Publishing claims Rougvie doesn't have experience in the relevant niche within the music industry, as noted above, "[i]f the expert has . . . experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Lickteig*, 589 F. Supp. 3d at 329 (quoting *In re Zyprexa*, 489 F. Supp. 2d at 282). Publishing points to Rougvie's lack of knowledge about several major organizations for songwriters as evidence of his ignorance about songwriters specifically. But Rougvie's decades of experience in the music industry qualifies him to testify; Publishing can air its specific gripes concerning the limits of that experience at trial. *See Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 2013 WL 978980, at *5 (S.D.N.Y. Mar. 12, 2013) (finding corporate finance expert qualified though he lacked expertise in specialized category of private placements of asset-backed securities to institutional investors).

Second, Publishing objects that Rougvie's opinions lack a sufficient factual foundation and are misleading. Publishing's main complaint is that Rougvie failed to investigate the facts underlying his opinions thoroughly. Again, these criticisms are better directed at cross-examination, not exclusion. On the Court's read of Rougvie's report, it contains conclusions about record companies and publishing companies based on Rougvie's personal experience and explanations of why that experience is relevant to those conclusions. *See Pension Comm. of Univ. of Montreal Pension Plan*, 691 F. Supp. 2d at 473. That Publishing disagrees with some of these conclusions or believes that Rougvie should have taken different information into account is an issue for trial. *See SEC v. Laura*, 680 F. Supp. 3d 204, 223-24 (E.D.N.Y. 2023) (attack on expert's reliance on "cherry-picked" documents goes to weight of testimony and not admissibility).

Publishing also points to what it views as unsubstantiated implications of statements in Rougvie's report, including about the business choices of Taylor Swift and the reason why half of Ultra Records was sold in 2012. *See* Dkt. 57 at 10-12. But the testimony itself satisfies the Rule 702 bar. Just as Publishing was able to explain those unsupported inferences in its briefing, it can expose any weaknesses in Rougvie's testimony during cross-examination. *See E.E.O.C.*, 2010 WL 3466370, at *6.

Finally, Rougvie's testimony is relevant. As the Court described above, Rougvie's report discusses the similarities between the services offered by record companies and publishing companies—a key issue in this case. Proximity of products is one of the factors courts use to determine the likelihood of confusion in a trademark-infringement action. *See Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("To the extent goods (or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is

more likely to cause confusion."). Publishing doesn't really engage with this response. Instead, it reasserts that Rougvie's testimony is based on speculation and is misleading. *See* Dkt. 117 at 5. As noted above, the Court rejects these arguments as grounds for exclusion.

### D. Kneuper

At the parties' request, the Court plans to bifurcate the case into a jury trial on liability and, if necessary, a bench proceeding on remedies. *See* Dkt. 145 at 2 (requesting bifurcation). The parties agree that Kneuper will not testify before the jury. *Id*. Because Kneuper will only testify before the Court (if at all), the Court will determine what portions of his testimony are admissible after hearing Kneuper testify. *See Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 220-21 (S.D.N.Y. 2019) (reserving judgment on *Daubert* motion where judge served as factfinder); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 457 n.1 (S.D.N.Y. 2007) ("In the context of a bench trial where there is not a concern for juror confusion or potential prejudice, the court has considerable discretion in admitting the proffered testimony at the trial and then deciding after the evidence is presented whether it deserves to be credited by meeting the requirements of *Daubert* and its progeny.").

## CONCLUSION

For the reasons stated above, Records' motion to exclude the expert testimony of Bijan Amirkhani and portions of the expert testimony of Gary Casson is granted in part and denied in part. Publishing's motion to exclude the expert testimony of Jeff Rougvie is denied. The Court reserves judgment on Records' request to exclude portions of the expert testimony of Robert Kneuper.

The Clerk of Court is directed to terminate Dkts. 49 and 57.

SO ORDERED.

Dated: November 4, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge